UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MCBRIDE, | ) |
|       Plaintiff, | ) |
| v. | ) No. 21 C 50202 |
| AXIUM FOODS, INC., | ) Judge Rebecca R. Pallmeyer |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David McBride brings this action under the Americans with Disabilities Act ("ADA") against Defendant Axium Foods, Inc., alleging that Defendant rescinded a conditional offer of employment for no other reason than learning that Plaintiff was a recovering drug addict. The parties dispute nearly every significant fact: they dispute whether Plaintiff was cleared for work by a medical evaluation, when the evaluation took place, and even whether Defendant rescinded the conditional offer at all. Nonetheless, Defendant has moved for summary judgment on the narrow basis that Plaintiff has not provided sufficient evidence that he was qualified to perform the "essential functions" of the job he applied for, under the meaning of the ADA. For the reasons discussed below, Defendant's motion is denied.

**BACKGROUND**

**I.     Factual Background**

    **A.     Plaintiff's Background and Treatment for Addiction**

Plaintiff David McBride is a recovering heroin addict who has participated in an outpatient rehabilitation program since approximately 2018. (*See* Def.'s Ex. F, McBride Dep. Tr. [65-7], 23:11–25:14.) As part of his treatment in that program, Plaintiff takes daily doses of methadone administered legally by the rehabilitation clinic to help alleviate his cravings for heroin. (*See* Pl.'s Ex. 1, Treatment Records [70-1] at 1, Pl.'s Ex. 2, McBride Aff. [70-2], ¶ 18.) Plaintiff has testified

that the methadone treatment does not make him dizzy, confused, or lightheaded, nor does the drug affect his ability to climb ladders or work from heights. (McBride Aff. ¶¶ 18–20.)

> **B.** **Plaintiff Applies to Work at Axium**

In June 2019, Plaintiff was looking for a job. (*See* Pl.'s Combined Resp. and Rule 56.1(b)(3) Statement of Additional Facts (hereinafter "PSOAF") [70], ¶ 35.) On June 14, he applied for a position titled "Corn Chip Process Operator" (hereinafter "CCPO") at Axium Foods, a manufacturer of corn-based snack products. (McBride Aff. [70-2], ¶ 3; *see* Def.'s Mem. [65] at 1.) In a description of the essential duties of CCPOs approved by Defendant's human resources manager, Jeff Kizer, the "essential functions" of the position include following dress code and product safety guidelines, keeping the work area clean, keeping attendance, monitoring product quality and scrap disposal, reporting safety issues to supervisors, communicating with other personnel, and other similar duties. (*See* Def.'s Ex. B, CCPO Job Description [65-3] at 1.)[1] The job description further explains that

> [t]he employee is frequently required to stand; walk; sit; use hands to finger, handle or touch objects, tools, or controls; reach above shoulders; and talk and listen. The employee is occasionally required to climb, stoop, kneel, crouch or crawl; and use foot/feet to operate machine. The employee must frequently lift and/or move up to 50 pounds and occasionally lift and/or move up to 65 pounds. Specific vision abilities required by this job included close vision, distance vision, color vision, peripheral vision, depth perception and the ability to adjust focus.

(*Id*. at 2.) The job description does not categorize the position as being more dangerous than other positions, but notes, in terms of environmental factors, that "the employee is occasionally (or regularly) exposed to . . . cold, extreme heat and humidity" and "[exposure] to hydrated lime frequently while cooking corn, caustic soda and Muriatic acid while conducting end of week sanitation." (*Id*.)

---

[1] As Plaintiff notes, this document was approved on June 29, 2019, nearly two weeks after he applied to the position. (*See* PSOAF ¶ 3.) Plaintiff asserts that this renders the document irrelevant and improperly cited. (*Id*.) But Plaintiff provides no alternative account of the essential functions of the position, and the document is dated close enough to the date of his application that the court assumes it accurately reflects the requirements of the CCPO position as of June 14, 2019.

Plaintiff received a conditional offer of employment from Axium to fill the CCPO position on June 21, 2019. (Def.'s Rule 56.1 Statement of Facts (hereinafter "DSOF") [65-1], ¶ 1; *see also* Def.'s Ex. A., Conditional Employment Offer [65-2].) The offer was contingent on Plaintiff's clearing a drug screening and physical examination. (DSOF ¶ 12.)

### C. Plaintiff Clears Physical Examination and Drug Screening

On June 21, 2019, the same day that Plaintiff received the conditional offer of employment, Dr. Robin Borchardt conducted a physical examination of Plaintiff. (*Id.* ¶ 13; See Def.'s Ex. D, Medical Screening [78] at 1.) Dr. Borchardt is a physician employed by Ortho Illinois, a clinic in Rockford, Illinois that performs physical and drug screenings for prospective Axium employees. (*See* Def.'s Ex. C, Kizer Dep. [65-4], 13:21–14:24.) Dr. Borchardt's evaluation concluded that Plaintiff was "cleared without limitations and able to perform essential job functions." (Medical Screening at 1.) Somewhat contradictorily, however, Dr. Borchardt's evaluation also notes that Plaintiff was "cleared with the following recommendations: [sic] must not perform safety sensitive posit[ions] i.e. work at heights." (*Id.*) The evaluation does not describe what "safety sensitive" means, nor does the record show whether the position of CCPO would require Plaintiff to work "at heights."

Dr. Borchardt also collected a urine sample during the evaluation. (DSOF ¶ 14.) The sample was sent to a testing lab, Quest Diagnostics-Lenexa, which tested the sample on June 22, 2019, and reported the results to another physician at Ortho Illinois, Dr. Seth Portnoy, on June 25. (*See* Medical Screening at 3.) On June 26, Dr. Portnoy prepared a review of the testing, noting that Plaintiff's drug screening was negative for all the tested substances including methadone and opiates. (*See id.* at 4.)[2] But providing "additional comments" in his final determination, Dr. Portnoy notes that "[Plaintiff] is not cleared for safety sensitive duties. A Fitness

---

[2] Plaintiff has explained that his dose of methadone does not always show up in drug screenings. (*See* McBride Dep. at 23:4–9.)

for Duty physical should be performed by an independent physician to determine if the donor is capable for performing a safety sensitive position." (*Id*. at 2.) The report does not state the basis for Dr. Portnoy's comment. "Contact [was] [m]ade" (i.e. the clinic sent the results to Plaintiff) on June 26, 2019. (*Id*.)

### D. Plaintiff Visits Axium Facility

Plaintiff's claim arises from his interaction with Defendant's human resources manager, Jeff Kizer, while touring Axium's facility. (*See* PSOAF ¶¶ 40–45.) The parties disagree on what occurred in this interaction, and when it occurred.

#### 1. Plaintiff's Account

Plaintiff asserts that the site visit occurred on June 21, 2019, after he had been informed that he passed the physical evaluation and drug screening (PSOAF ¶ 38, McBride Aff. ¶¶ 5–7),[3] a date that, the court notes, precedes Dr. Portnoy's June 26, 2019, review of the test results (*see* Medical Screening at 2.) At this visit to the Axium facility, Plaintiff was shown the machines that he would operate as a CCPO and received the conditional offer of employment. (PSOAF ¶¶ 38–41.) After signing the offer, Plaintiff volunteered to Kizer that he was a recovering addict and using methadone. (*Id*. ¶ 42.) Plaintiff testified that Kizer then told him that "[y]ou can't work here on methadone," and rescinded the conditional offer. (McBride Dep. at 40:15–21.) There was no attempt to accommodate Plaintiff, and Defendant did not contact him further about alternative positions for employment. (PSOAF ¶ 44.)

#### 2. Defendant's Account

In Defendant's account of events, Plaintiff first received the conditional offer of employment in person on June 21, 2021 (not during the tour), was sent to Ortho Illinois for the physical evaluation that same day, and was invited to interview with Kizer and tour the facility at

---

[3] Plaintiff's statement of additional facts departs from the allegation in his Amended Complaint which stated that this interaction occurred on July 1, 2019. (Am. Compl. [5], ¶ 9.)

some unspecified date after the results of the drug screening were reported.  (*See* DSOF ¶¶ 1, 18–19; *see also* Kizer Dep. at 19:22–21:1, 40:7–41:3.)  Defendant agrees that at Plaintiff's eventual tour with Kizer, Plaintiff raised the issue of his methadone use.  (DSOF ¶ 20.)  According to Kizer, relying on both Dr. Borchardt's evaluation and Kizer's own conclusion that methadone use would hinder Plaintiff's ability to "focus," Kizer determined that the CCPO position would not be appropriate for Plaintiff.  (*See id*. at 32:17–33:21.)[4]  But Kizer disputes that he "withdrew" the offer altogether.  (*See* Kizer Dep. at 32:10–16.)  Instead, he stated that Axium would offer Plaintiff "an accommodation with another job, same pay, same hours" or offered that Plaintiff could obtain a functional-capacity exam to clear him for "work at heights."  (*Id*. at 41:4–16.)  Kizer says that Plaintiff then became belligerent and stormed out of the facility.  (*Id*. at 42:17–43:3.)

## II.     Procedural History

Plaintiff filed charges of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about August 8, 2019.  (Am. Compl. ¶ 12.)  After the EEOC issued a Right to Sue Letter, Plaintiff filed this action on May 18, 2021.  His amended complaint [5] alleges two counts of discrimination under the ADA, one seeking compensatory damages from the rescission of the conditional offer (Count I) and another for injunctive relief to enjoin Defendant from enforcing its alleged "policy of discriminating against disabled persons" (Count II).  (*Id*. ¶¶ 15–18.)  Defendant filed its answer [8] on June 29, 2021, and the parties engaged in protracted discovery, completing expert discovery on January 16, 2024 (*see* Minute Order [56]).  Defendant's initial motion for summary judgment [57] was stricken for failure to comply with Local Rule 56.1.  (*See* Minute Order [58].)  Defendant then refiled its motion for summary judgment [64] on May 2, 2024, and the matter is now fully briefed.

---

[4]     It is unclear from Kizer's testimony whether he made this determination after reading Dr. Borchardt's report—that is, before Plaintiff arrived for his tour—or only after Plaintiff represented that he was using methadone.  (*See* Kizer Dep. at 32:14–33:4.)

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where the movant argues that there is an absence of evidence supporting an essential element of the non-moving party's claim, "the non-moving party must respond by offering evidence that would allow a reasonable trier of fact to find in that party's favor on the issue." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). The court must "view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor" in determining whether each party has met its respective burden. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures [and] hiring." 42 U.S.C. § 12112(a). To prevail on a claim of discrimination under the ADA, the Plaintiff must prove that "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). At summary judgment, "it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation." *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863–64 (7th Cir. 2005)).

**DISCUSSION**

Defendant seeks summary judgment on the narrow ground that Plaintiff has failed to establish that he was otherwise qualified to perform the essential functions of the CCPO position. (*See* Reply [74] at 1–2.) As noted above, even in opposing a motion for summary judgment, it is

6

Plaintiff's burden to produce sufficient evidence that he would have been able to perform the essential functions of the job. *Basden*, 714 F.3d at 1037. Putting aside the various factual disputes between the parties, the court must determine whether the evidence in the record is sufficient to permit a jury to conclude that Plaintiff could "satisfactorily perform" the essential functions of the CCPO position "with or without an accommodation." *Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697, 707 (N.D. Ill. 2019).

First, in determining what the essential functions of corn chip process operation are, the court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010). Defendant has provided a formal description of the essential functions of corn chip process operation, approved by its human resources manager. (*See* CCPO Job Description at 1.) Plaintiff contests that this description of functions is untimely given the date of its approval (PSOAF ¶ 3) but does not argue or provide evidence that the description of essential functions in the document is inaccurate. Indeed, given that Plaintiff would have started working as a CCPO in or around the end of June 2019, a job description approved on June 29, 2019, is the best measure of what the essential functions of Plaintiff's role at Axium would have been. The court accepts Defendant's description of essential functions in Exhibit B as the relevant account of the essential functions of corn chip process operation.

With this description of essential functions in mind (*see supra* p. 2), the court must determine whether Plaintiff has presented sufficient evidence that he was able to satisfactorily perform these functions with or without an accommodation. Plaintiff can meet this burden with evidence that he performed a similar job after the adverse employment action or by offering an "expert medical or vocational evaluation of his capabilities with or without accommodation." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 293–94 (7th Cir. 2015); *see also Basith v. Cook Cnty.*, 241 F.3d 919, 930 (7th Cir. 2001) (granting summary judgment to employer but finding plaintiff

7

could have met burden of establishing qualified status with "a report from his doctor that he could fully perform [essential] function with his proposed wheelchair"). Additionally, the court may credit Plaintiff's own testimony, even if self-serving, accurately describing his functional limitations and supporting his ability to perform essential functions. *See Jankowski*, 378 F. Supp. at 709. Expert testimony is not required to show that Plaintiff was able to perform essential functions that do not "involve duties that are likely beyond the experience of most jurors." *Cf. Stern*, 788 F.3d at 294 n.11.

Plaintiff has met his burden at this stage of the litigation. The medical evaluation introduced by Defendant shows that Dr. Borchardt (a) found Plaintiff was not limited by any medical or musculoskeletal abnormalities and (b) cleared Plaintiff for the essential functions of work at Axium "without limitation." (*See* Medical Evaluation at 1.)[5] Certainly, the additional entry in the evaluation "recommend[ing]" that Plaintiff not work in "safety sensitive positions" including "at heights" raises questions, such as whether the recommendation was based on Plaintiff's physical or medical limitations, whether the CCPO was a "safety sensitive" position, and whether the CCPO position required working at heights. But these are factual questions that a jury must resolve, potentially by hearing Dr. Borchardt testify in more detail concerning his conclusions. At this stage, there is ample evidence of Plaintiff's fitness in the evaluation that would permit a jury

---

[5] The court notes that the medical evaluation, in its current form, would likely be inadmissible as hearsay as proof that Plaintiff was in fact capable of performing the essential functions of a CCPO. *See* FED. R. EVID. 801(c); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) (plaintiff's "testimony regarding his doctor's statement, submitted for the purpose of establishing his ability to perform the essential functions of his job with accommodations" was inadmissible hearsay and "incompetent evidence to oppose summary judgment."). In this case, given that Defendant has already designated Dr. Borchardt as an expert that may be called to testify at trial (*see* Def.'s Expert Disclosures [52] at 2–3), the court is reasonably confident that the evidence contained in the medical evaluation can be produced at trial through Dr. Borchardt's in-court testimony. Such opinion testimony is precisely the kind of evidence courts rely on to determine whether an individual is qualified to perform essential functions. *See Jankowski*, 378 F. Supp. at 708–09.

to find, as Dr. Borchardt did, that Plaintiff was "cleared without limitation and able to perform essential job functions." (Medical Screening at 1.)

Dr. Borchardt's conclusion is supported by Plaintiff's own testimony as well. Plaintiff had been using methadone for at least six months as a recovering heroin addict by the time he applied for work at Axium. (Treatment Records at 1.) He testified that the drug did not complicate his ability to climb or perform the essential functions of a CCPO, and did not make him feel "dizzy, confused, or lightheaded." (McBride Aff. ¶¶ 17–19.) There is no indication that Plaintiff's status as a recovering addict or his use of methadone would have impacted ability to work,[6] and Plaintiff's testimony could permit a jury to find that he could perform the essential functions of a CCPO.

## CONCLUSION

Defendant's motion for summary judgment [64] is denied.

ENTER:

Dated: November 15, 2024

REBECCA R. PALLMEYER
United States District Judge

---

[6] To be disabled under the ADA, an individual must have either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff appears bring an (A) claim, arguing that his status as an addict in remission is a disability. (See Opp. at 3.) He bases this argument on § 12114(b) and urges that "[a]s the Plaintiff continues to engage in a supervised rehabilitation program, he is a qualified American with a disability." (Id. at 4.) But § 12114(b) is a safe harbor provision, not a category of disability. Participation in a supervised rehabilitation removes the bar for a plaintiff using illegal drugs to bring a claim under the ADA; it does not automatically make that individual a qualified individual with a disability. A plaintiff invoking protection under the first definition (A) must still prove that they have an impairment that limits a major life activity. See Quigley v. Austeel Lemont Co., 79 F. Supp. 2d 941, 947 (N.D. Ill. 2000) ("Because [plaintiff] admits that his drug use did not impact his work, [he] has failed to establish that his alleged disability substantially limits the major life activity of working.") The court need not address this issue at length, however, as Defendant has not raised the issue in its motion and there is evidence in the record that Defendant "regarded" Plaintiff as having a disability. (See Kizer Dep. at 41:17–42:1.)